MEMORANDUM **
Svetlana Stepanyan, a native and citizen of Armenia, petitions for review of the denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We deny the petition with respect to the application for asylum and withholding of removal, but we vacate and remand the CAT claim for further review.
I. Background
Because the Immigration Judge determined that Stepanyan was credible, we assume that her testimony and declaration are true. See Navas v. INS, 217 F.3d 646, 667 (9th Cir. 2000).
Stepanyan testified that she worked as a journalist and editor at a TV station in Armenia, where she was responsible for approving news broadcasts. The owner and operator of the station, her direct superior, was a prominent member of an opposition political party and was critical of the Armenian government. In 2006, an agent of the Armenian National Security Service (NSS) recruited Stepanyan to become an informant against the opposition party and the TV station’s owner. She initially refused, but was coerced into helping the NSS by threats and an involuntary overnight detention.
The NSS eventually became dissatisfied with Stepanyan’s efforts, and after she refused to help any longer, said the old regime was gone, and told them she was not their “puppet,” the agent threatened to use “another language” to secure her cooperation. Two days later, Stepanyan was assaulted near her apartment by “two men who looked like bandits” or “thieves,” who said they would make her disappear if she did not do as she was told. Stepanyan fled to the United States. After she left, her husband sent a letter to the prosecutor’s office on her behalf, NSS agents and police then ransacked her house and beat her husband when he refused to help them, and they told him he would not see her again. NSS agents were again looking for her at home in Armenia as recently as the month before her asylum hearing. In the years since Stepanyan left Armenia, the TV station closed.
The IJ denied Stepanyan’s petition for asylum, withholding of removal, and CAT relief. The Board of Immigration Appeals affirmed. It concluded that Stepanyan “did not demonstrate that any harm she may have experienced on account of her political opinion, even if considered in the aggregate, rose to the level of persecution.” It also concluded that the possibility of future persecution was not sufficient to demand relief. The BIA considered the country conditions report, but it concluded that the report did not support Stepa-nyan’s application; she had not proven “that any of the other reporters or journalists at her television station were persecuted.” The BIA also affirmed the denial of Stepanyan’s application for withholding of *564 removal for the same reasons, and it affirmed the IJ’s decision not to grant Stepa-nyan relief under the CAT without further explanation, although it did cite our decision in Arteaga v. Mukasey, 511 F.3d 940 (9th Cir. 2007). In Arteaga, we upheld the denial of CAT relief because the appellant had “failed to prove that any potential torture he might experience in El Salvador would be at the hands of the government.” Id. at 948.
Stepanyan petitioned for review, challenging the BIA’s decision on each of her three claims for relief. Because the BIA “agreed with the IJ’s decision but did not adopt it,” we limit our review to the BIA’s written opinion. Maldonado v. Lynch, 786 F.3d 1155, 1160 (9th Cir. 2015) (en banc). We consider each of Stepanyan’s claims in turn.
II.Asylum
“To qualify for asylum, an applicant must show that she ... ‘is unable or unwilling to return to [her home country] ... because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.’ ” Ling Huang v. Holder, 744 F.3d 1149, 1152 (9th Cir. 2014) (quoting 8 U.S.C. § 1101(a)(42)(A)). “We review factual findings ... under the deferential substantial evidence standard.” Ai Jun Zhi v. Holder, 751 F.3d 1088, 1091 (9th Cir. 2014). “We may -reverse factual determinations only when ‘any reasonable adjudicator would be compelled to conclude to the contrary' based on the evidence in the record.” Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). “Although the basis for our review is limited to the administrative record, we consider that record in its entirety, including evidence which contradicts the BIA’s findings.” Mgoian v. INS, 184 F.3d 1029, 1034 (9th Cir. 1999).
Here, the administrative record does not as a whole compel a conclusion contrary to that of the BIA, skeptical though we are of that conclusion. Although Stepanyan was assaulted outside her home, the identity and purposes of her attackers was uncertain. Nor was she harmed at the hands of the NSS during her overnight detention, and her former boss and co-workers have not been harmed, at least as far as she knows. The BIA was wrong to say that Stepanyan was never threatened—quite clearly she was, and her husband says he was even beaten by the NSS—but the threats were nonspecific and do not compel the conclusion that she was persecuted because of her political opinions. ■ In addition, because many years have passed since Stepanyan left Armenia, no one else at the TV station has been harmed, and the TV station is no longer in service, we are not compelled to conclude that Stepanyan has a well-founded fear of future persecution. We therefore deny Stepanyan’s petition for review of the BIA’s decision on her asylum application.
III. Withholding of Removal
Because the standard for withholding of removal is “more stringent than the well-founded fear standard governing asylum,” Al-Harbi v. INS, 242 F.3d 882, 889 (9th Cir. 2001), we also deny review of the agency’s decision not to grant withholding of removal.
IV. The Convention Against Torture
To obtain relief under the CAT, a respondent must show she is more likely than not to be tortured by the government (or with the government’s consent or acquiescence) if she is returned to her home country. Avendano-Hernandez v. Lynch, 800 F.3d 1072, 1078-79 (9th Cir. 2015). But “an application for CAT relief need not show that he will be tortured ‘on account *565 of any particular ground.” Cole v. Holder, 659 F.3d 762, 770 (9th Cir. 2011).
As in our review of a claim for asylum, factual findings underlying the determination that an applicant is not eligible for relief under the CAT are reviewed for substantial evidence. Id. Unlike our review of a claim for asylum, however, when reviewing a claim for CAT relief, “all evidence relevant to the possibility of future torture shall be considered.” Id. (emphasis added) (quoting 8 C.F.R. § 1208.16(c)(3)). “tWjhere there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence.” Id. at 771-72. For that reason, we remand petitions when the agency has not considered relevant evidence. See, e.g., Pirir-Boc v. Holder, 750 F.3d 1077, 1085-86 (9th Cir. 2014); Madrigal v. Holder, 716 F.3d 499, 509 (9th Cir. 2013); Cole, 659 F.3d at 771-73; Aguilar-Ramos v. Holder, 594 F.3d 701, 705-06 (9th Cir. 2010).
Here, the BIA made one error and one omission that bear directly on the possibility that Stepanyan will face torture at the hands of the Armenian government. First, the BIA stated incorrectly that Armenian government agents had not threatened Stepanyan. As noted above, an NSS agent told her “that they can do everything they want with me and nobody would ever find out,” and when she eventually refused to help the NSS any longer, the agent told her that he would have to persuade her with “another language.” Second, the agency did not address the evidence that officers beat Stepanyan’s husband after he sent a letter to a local prosecutor on her behalf, and that they told him he would never see her again. It is also unclear whether the BIA considered the country conditions evidence in evaluating the CAT claim.
Where, as here, the BIA has apparently not considered all evidence bearing on a CAT claim, “the proper course, except in rare circumstances, is to remand to the .agency for additional investigation or explanation.” INS v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam) (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)).[1]
DENIED in part, VACATED in part, and REMANDED in part.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. Although it could be rational to predict, as the dissent does, that the BIA will again deny CAT relief on remand, our case law instructs us not to assume how the BIA will decide the claim with the benefit of a complete view of the evidence and record, at least when it is possible the BIA could come to a different conclusion. Here, the combination of threats to Stepanyan’s life and country report evidence of treatment of opposition journalists could lead the BIA to conclude that Stepa-nyan would face sufficient risk of torture or death if returned to Armenia to warrant CAT relief. See, e.g., Pirir-Boc, 750 F.3d at 1080, 1085-86 (remanding a CAT claim where the petitioner had been outspoken in opposition to a group that had beaten and threatened him with death); Aguilar-Ramos, 594 F.3d at 703-06 (remanding to allow the BIA to consider country reports that might show the petitioner was in particular danger of torture or death on return to his home country).
This result of remanding the CAT claim but not the asylum or withholding claim is admittedly an odd one on the whole, but it appears to be compelled by the precedents cited above; On the one hand, we must deny relief in the contexts of asylum and withholding of removal unless the administrative record presented to the agency compels a result contrary to the agency's decision. See Mgoian, 184 F.3d at 1034. And on the other, we remand claims for CAT relief if the agency has "misstated the record” and has not mentioned "potentially dispositive evidence.” See Cole, 659 F.3d at 771-72.