NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 11 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHUANBIN FENG,<br><br>    Petitioner,<br><br> v.<br><br>ROBERT M. WILKINSON, Acting Attorney General,<br><br>    Respondent. | No. 18-72354<br><br>Agency No. A200-797-691<br><br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 9, 2021**
Pasadena, California

Before: O'SCANNLAIN, CALLAHAN, and OWENS, Circuit Judges.

Chuanbin Feng (Feng), a native and citizen of China, petitions for review of

the Board of Immigration Appeals' (BIA) dismissal of his appeal challenging the

immigration judge's (IJ) denial of asylum, withholding of removal, and protection

under the Convention Against Torture (CAT) based on an adverse credibility

---

 \*   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

 \*\*   The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

determination.[1] We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

Adverse credibility determinations are reviewed for substantial evidence, and the BIA's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Iman v. Barr*, 972 F.3d 1058, 1064 (9th Cir. 2020). Where the BIA adopts the decision of the IJ and adds no reasoning of its own, "we treat the incorporated parts as the BIA's." *Aguilar-Ramos v. Holder*, 594 F.3d 701, 704 (9th Cir. 2010). Feng's applications are subject to the REAL ID Act, under which "the IJ may base an adverse credibility determination on any relevant factor that, considered in light of the totality of the circumstances, can reasonably be said to have a 'bearing on a petitioner's veracity.'" *Ren v. Holder*, 648 F.3d 1079, 1084 (9th Cir. 2011) (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010)).

Substantial evidence supports the adverse credibility finding. First, Feng testified in 2014 that he first attended the Church of Glory in 2012, then a Jehovah's Witnesses church in Monterey Park, California, starting in 2013. However, in 2017, he testified that he had attended only the Jehovah's Witnesses church, irregularly in 2010 then regularly beginning in 2013. He testified that in 2012 he did not attend any church. When given a chance to explain the

---

[1] Because the parties are familiar with the facts, we restate only those necessary to explain our decision.

2

discrepancy from his 2014 testimony, he could not remember the questions or his answer.

Second, in 2014, he testified that he was introduced to the Jehovah's Witnesses church through his Super Moon Buffet colleague. In contrast, in 2017, he testified that in 2010 he came upon the church by himself and simply walked in, and began attending regularly in 2013 at the invitation of a colleague he knew from remodeling jobs.

Third, while confirming during his 2017 testimony that the Jehovah's Witnesses church was near his home, he also testified that he had been living and working in Las Vegas, Nevada. In fact, he stated that he was in Las Vegas "most of the time." When asked why he did not bring up Las Vegas when he stated his address earlier in the hearing, he only said that the California address he mentioned is where he stays when he returns monthly and where he receives mail.

Fourth, in 2014 Feng testified that his wife finished only middle school, but in 2017 testified that she graduated from high school. Feng now argues that this inconsistency may have been due to a translation misunderstanding, but at the time of his testimony he appeared to understand the difference between middle and high schools.

Fifth, when asked in 2017 why his wife joined his household registry just the day before he left for the United States, he answered only that it was because she

3

wanted to show that she would not leave him. However, Feng understood that it is customary for a wife to join the husband's household registry upon marriage, and there is no indication that his marriage was an unhappy one. Further, he offers no support for his argument before the Ninth Circuit that staying on her family's household registry may have benefited her parents.

Sixth, in 2014 he testified that a family photo was taken about two months after he was arrested in China. He was allegedly arrested in January 2010, so two months thereafter would be March 2010. However, in 2017, he testified that it was taken in May 2010.

Moreover, the IJ pointed to numerous specific instances in which Feng had demonstrated a lack of specificity, responsiveness, and memory, which combined, support her finding that Feng's overall demeanor was evasive and lacking in candor. These factors, too, were permissible and relevant for the IJ to consider in her adverse credibility determination. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (referring to "the demeanor, candor, or responsiveness of the applicant" for asylum or withholding of removal).

Because the IJ specifically and cogently identified reasonable grounds for finding Feng's testimony not credible, Feng failed to meet his burden of establishing eligibility for either asylum or withholding of removal. *See Shrestha*, 590 F.3d at 1048.

Feng variously counters that the discrepancies identified by the IJ are trivial or irrelevant, or that the agency's inferences are speculative and conjectural. However, as to the agency's conclusions, we do not find that "any reasonable adjudicator would be compelled to conclude to the contrary." *See Iman*, 972 F.3d at 1064; *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) ("Even if we might have reached a conclusion different from that reached by the BIA, we may not reverse unless we determine that any reasonable factfinder would have been compelled to reach that conclusion.").

Finally, substantial evidence also supports the BIA's finding that Feng failed to establish "it is more likely than not that he . . . would be tortured if removed" to China. 8 C.F.R. § 1208.16(c)(2). "[W]hen a petitioner's 'claims under the [CAT] are based on the same statements . . . that the BIA determined to be not credible' in the asylum context, the agency may rely upon the same credibility determination in denying both the asylum and CAT claims." *Singh v. Lynch*, 802 F.3d 972, 977 (9th Cir. 2015) (alterations in original) (quoting *Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir. 2003)). Because Feng's CAT claim is based on the same testimony as his asylum claim, substantial evidence supports the denial of protection under the CAT.

**PETITION DENIED**.