NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 18 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HAYDEE ALICIA LEZAMA-
MEJIA;  JEICER JASSIR RAMOS-
LEZAMA; and CARLOS EMANUEL
RAMOS-LEZAMA,

Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 22-864

Agency Nos.
A201-499-406
A201-499-407
A201-499-408

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 16, 2023
San Jose, California

Before: MURGUIA, Chief Judge, and PAEZ and FRIEDLAND, Circuit Judges.

Haydee Lezama-Mejia and her two derivative applicant children, Jeicer

Ramos-Lezama (JRL), and Carlos Ramos-Lezama (CRL) (together, Petitioners)

petition for review of the Board of Immigration Appeals (BIA) dismissal of their

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

appeal of an Immigration Judge's (IJ) decision denying their applications for asylum, withholding of removal, and for protection under the Convention Against Torture (CAT). Petitioners are natives and citizens of Honduras.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). Our review is "limited to the BIA's decision except where the IJ's opinion is expressly adopted." *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022). We review for substantial evidence the agency's factual findings, and we review de novo questions of law. *Flores-Rodriguez v. Garland*, 8 F.4th 1108, 1113 (9th Cir. 2021). "Whether a group constitutes a 'particular social group' is a question of law," which is reviewed de novo. *Cordoba v. Barr*, 962 F.3d 479, 482 (9th Cir. 2020) (internal quotation marks omitted) (quoting *Pirir-Boc v. Holder*, 750 F.3d 1077, 1081 (9th Cir. 2014)).

Petitioners raise four separate arguments. First, JRL argues that the BIA erred when it found that his proposed particular social groups of "Honduran youth" and "Honduran school children" were not cognizable. Second, Lezama-Mejia and CRL contend that the BIA erred when it determined that they had not suffered past persecution or established a well-founded fear of future persecution based on their membership in the proposed family-based social group of "Family Members of Jeicer J. Lezama-Ramos." Third, Petitioners contend that the BIA erred when it determined that they had not suffered past persecution or established a well-

founded fear of future persecution on account of their imputed anti-gang political opinion. Fourth, Petitioners argue that the BIA erred when it determined that they were not eligible for CAT relief.

We address each argument in turn. We grant the petition for review as to JRL's asylum and withholding of removal claims and remand those claims to the BIA. We deny the petition for review as to Lezama-Mejia and CRL.

**1. Youth-Based Particular Social Groups.** An applicant for asylum and withholding of removal bears the burden of establishing eligibility for such relief. 8 U.S.C. §§ 1158(b)(1)(B)(i), 1229a(c)(4)(A). *See Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010); *see also* 8 U.S.C. §§ 1101(a)(42)(A), 1231(b)(3)(A). "Both asylum and withholding depend on a finding that the applicant was harmed, or threatened with harm, on account of a protected ground. One such ground is that the applicant is a member of a particular social group." *Plancarte Sauceda*, 23 F.4th at 833. The BIA has previously interpreted the phrase "particular social group" to refer to a group that is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014); *see also Reyes v. Lynch*, 842 F.3d 1125, 1131 (9th Cir. 2016).

The BIA has defined "immutable" to mean a characteristic "'that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" *Matter of W-G-R-*, 26 I. & N. Dec. 208, 212 (B.I.A. 2014) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985)); *see also Plancarte Sauceda*, 23 F.4th at 833. Particularity requires that a proposed social group be "discrete" and possess "definable boundaries." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1077 (9th Cir. 2020) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 239).

The BIA has further explained that the social distinction requirement "'refers to social recognition' and requires that a group 'be perceived as a group by society.'" *Rios v. Lynch*, 807 F.3d 1123, 1127 (9th Cir. 2015) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 240). "[D]etermining whether a proposed social group is cognizable necessarily involves 'case-by-case determination[s] as to whether the group is recognized by the particular society in question.'" *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 897 (9th Cir. 2021) (second alteration in original) (quoting *Pirir-Boc*, 750 F.3d at 1084). "The BIA's conclusion regarding social distinction—whether there is evidence that a specific society recognizes a social group—is a question of fact that we review for substantial evidence." *Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020).

Here, the BIA concluded that "Honduran youth" and "Honduran school children" were not cognizable particular social groups because they lacked immutability, particularity, and social distinction. We consider each element in turn.

The BIA determined that JRL's proposed social groups lacked immutability because "youth[,] by its very nature is a temporary state that changes over time." In support of this proposition, the BIA cited to *Matter of S-E-G-*, 24 I. & N. Dec. 579, 583 (B.I.A. 2008). But in *Matter of S-E-G-*, the BIA held that, while youth is not entirely immutable, the mutability of age is "not within one's control, and [] if an individual has been persecuted in the past on account of an age-described particular social group, or faces such persecution at a time when that individual's age places him within the group, a claim for asylum may still be cognizable." *Id.* at 583–84. Taken together, the BIA's decisions in *Matter of W-G-R-* and *Matter of S-E-G-* make clear that an immutable characteristic is one that members of the group cannot change, and the BIA has recognized that an individual cannot control or change their age. *Matter of W-G-R-*, 26 I. & N. Dec. at 213; *Matter of S-E-G-*, 24 I. & N. Dec. at 583–84. Because the BIA failed to properly consider its own precedent regarding the cognizability of an age-described particular social group, the basis upon which it rejected JRL's proposed "Honduran youth" and "Honduran

school children" social groups was erroneous.[1] *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1091 (9th Cir. 2013) (en banc).

The BIA also concluded that "Honduran youth" and "Honduran school children" lacked social distinction. The BIA determined that Petitioners had failed to present evidence that Honduran society recognizes Honduran youth as a distinct group. This determination was not supported by substantial evidence. The BIA's conclusion ignores uncontradicted record evidence that Honduran society recognizes Honduran youth as a discrete class of persons. Country conditions reports state that ninety percent of Hondurans surveyed reported that gangs had a negative effect on Honduran youth, primarily due to threats and coercion to join gangs, suggesting that Hondurans recognized "youth" as a group. Record evidence also indicates that gangs in Honduras appear to specifically target Honduran children as young as six years old for forcible gang recruitment, again suggesting that Hondurans have a concept of "youth" as a group. The BIA's failure to consider such relevant record evidence "constitutes reversible error." *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010). Indeed, "[w]here the Board does not consider all the evidence before it, either by 'misstating the record [or] failing to mention highly probative or potentially dispositive evidence,' its decision

_____

[1] Because the BIA's analysis conflated "Honduran school children" with "Honduran youth," the agency should specifically address the cognizability of the former on remand.

cannot stand." *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020) (alteration in original) (quoting *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011)). On this record, substantial evidence compels the conclusion that Honduran society recognizes Honduran youth as a distinct group of persons. *Henriquez-Rivas*, 707 F.3d at 1092.

By failing to address relevant record evidence and failing to analyze how such evidence might impact whether JRL's proposed social group was sufficiently distinct, the BIA's cognizability determination was insufficient under *Pirir-Boc*, 750 F.3d at 1084. There, we held that the BIA must engage in a "case-by-case determination as to whether the group is recognized by the particular society in question." *Id*. In concluding that JRL's proposed social group was not cognizable under its precedent, the BIA failed to consider significant evidence that Honduran society recognizes the unique vulnerability of Honduran youth to forcible gang recruitment, as gang members target these individuals as a group.

In light of our determination that the proposed particular social group "Honduran youth" satisfies immutability and social distinction, we remand to the BIA to determine whether it possesses sufficient particularity to be cognizable, and, if so, whether JRL has demonstrated past persecution or a well-founded fear of future persecution "on account of" his membership in such a group. *Perdomo v. Holder*, 611 F.3d 662, 669 (9th Cir. 2010).

**2. Family-Based Particular Social Group.** Petitioners argue that Lezama-Mejia and CRL suffered past persecution and established a well-founded fear of future persecution on account of their kinship to JRL. In conversations with JRL, gang members threatened to harm Lezama-Mejia and CRL if JRL did not join their gang. In addition, Lezama-Mejia was riding a bus when she witnessed armed men board the bus and attempt to rob some passengers.

The BIA determined that Petitioners had not demonstrated past persecution or a well-founded fear of future persecution on account of their kinship to JRL. This finding is supported by substantial evidence. In connecting Lezama-Mejia and CRL to JRL, the gang members were motivated by their desire to recruit JRL to join their gang. No evidence compels the conclusion that the persecutor's threats were motivated by Lezama-Mejia and CRL's kinship to JRL. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 357 (9th Cir. 2017) (explaining that "the persecutor's motive" is what matters for nexus).

As to the bus robbery incident, Lezama-Mejia has not shown that the robbers "were motivated by anything other than an economic interest." *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1019 (9th Cir. 2023) (citation and quotation marks omitted). It is well established that an applicant's "desire to be free from harassment by criminals motivated by theft . . . bears no nexus to a protected

ground." *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010). We therefore deny the petition as to Lezama-Mejia and CRL's family membership claim.

**3. Imputed Anti-Gang Political Opinion.** To establish past persecution on account of an imputed political opinion, Petitioners must show that their persecutors believed that they held a political opinion and that they were harmed on account of that imputed political opinion. *Singh v. Holder*, 764 F.3d 1153, 1159 (9th Cir. 2014). The BIA determined that Petitioners failed to meet this burden. This decision is supported by substantial evidence. Petitioners have not provided any evidence indicating that their persecutors believed they held an anti-gang political opinion, or that they were mistreated due to that imputed political opinion. *Rodriguez-Zuniga*, 69 F.4th at 1017. We therefore deny the petition as to Petitioners' imputed anti-gang political opinion claim.

**4. CAT Relief.** To qualify for relief under CAT, Petitioners must establish that "it is more likely than not that [they] would be tortured if removed" to Honduras. 8 C.F.R. § 1208.16(c)(2). The BIA concluded that Petitioners failed to meet this burden. The BIA's decision is supported by substantial evidence.

Torture is "more severe than persecution." *Guo v. Sessions*, 897 F.3d 1208, 1217 (9th Cir. 2018) (quoting *Nuru v. Gonzales*, 404 F.3d 1207, 1224 (9th Cir. 2005)). Petitioners must also prove that the torture would be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an

official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Petitioners must also demonstrate that they would be subject to a "particularized threat of torture." *Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (citation and quotation marks omitted).

Here, Petitioners argue that country conditions reports compel the conclusion that they would be tortured, but the reports offered only provide evidence about generalized gang violence in Honduras, not about a specific threat to Petitioners. Because Petitioners have failed to establish that it is more likely than not that they would be tortured if removed to Honduras, substantial evidence supports the agency's determination that Petitioners failed to establish that they would experience torture if removed to Honduras. We therefore deny the petition as to CAT relief.

Petitioners shall bear their own costs on appeal.

**PETITION GRANTED IN PART; DENIED IN PART; REMANDED.**